Mr. Tetzlaff. Good morning, Your Honors. May it please the Court, my name is Theodore Robert Tetzlaff and I represent the plaintiffs' appellants in this case, New West and New Bluff, which I will refer to as New West. The trial judge, Judge Norgel, relied principally on Parkland to use his findings of fact on equitable claims in a condemnation action to dismiss by collateral estoppel the discrimination claims, the federal discrimination claims, which New West had filed against Joliet. Claims which Congress, we submit, has mandated are to be tried by a jury. The issue here is whether the discretion afforded the court by Parkland and Beacon Theaters and the district court's own application of the federal rules can deprive New West of a jury trial on these discrimination claims. Mr. Tetzlaff, were the housing claims compulsory counterclaims in the condemnation action? No counterclaims are permitted in a condemnation action by rule. Right. However, in order to... And of course there's no such thing as a because it looks like the choice to present these arguments in the condemnation action was entirely New West's. So New West, having presented this as an argument in that action, obviously wasn't going to get a jury trial in the condemnation action, and now wants a second bite at the apple. But New West could have had a jury trial just by not presenting these defenses in the fact that affirmative offenses, unless asserted in a condemnation action under the rules, are deemed to be waived. And we most certainly would... Waived as defenses to the condemnation action. Well, and... But you've already told me they aren't compulsory counterclaims, so they could be asserted in a separate piece of litigation. That's just what it means to say they are not compulsory counterclaims. Whether no counterclaims are provided for at all... And then, yes, in consequence they are presentable in a separate action. They are if, unless they've been deemed waived by virtue of the fact that they weren't presented in a prior action... That would amount to saying they're compulsory counterclaims. Do you have any authority for the proposition that an FHA claim is barred by not being presented as a defense in a condemnation action? The authority we have is that authority. Not with respect to FHA claims. I looked. I couldn't find any. No, no, no. There's nothing that I know of out there. We're tossed back to the general... Indeed, I don't, for what it's worth, I don't understand why the district judge even permitted you to present this defense. Well, we would have been perfectly happy if he had reserved that for the trial of the case which we originally filed. All you had to do was withdraw it as a defense and say we're making it in this separate suit. That's the problem. What you're saying is that the Seventh Amendment entitled you to present the same argument twice. And I'm, that's hard to see. And our concern, Judge, is that had we not presented them as affirmative defenses, we certainly would have met an objection that they'd been waived by not being... If there was some authority for that proposition, that would stand you in good stead. That's why I look for it. That's why I'm now asking you, what's the authority for that proposition? No authority is, Your Honor, for the FHA claim. That seems to me the cornerstone of your current argument, that you had to make this defense in the Condemnation Act. And I just don't know any authority for that proposition. And you haven't cited any. I couldn't find any. And if there isn't any, then, well, there we are. We're tossed back to general waiver principles, Your Honor. And with respect to issues not raised are deemed waived. And I submit that the general waiver law on affirmative defenses in any action is, if not asserted, they can be deemed waived. And we're confident that opposing counsel would most certainly have taken that position. So without, in suggestion of waiver, they were asserted. The procedural sequences of these two cases, however, the FHA case and the condemnation case, I believe is critical in determining whether Park Lane applies to this case and supports the application of collateral estoppel. In March of 2005, New West filed a complaint against Joliet seeking monetary damages for discrimination under the Fair Housing Act. This case was assigned to Judge Norgel. More than six months later, Joliet filed an equitable condemnation action, which was removed to this court. Judge Norgel then requested that that condemnation action be reassigned to his calendar as a related case. In doing so, he found, as he must, that all of Local Rule 40.4's requirements had been met, including significantly that the cases were, quote, susceptible of disposition in a single proceeding. Judge Norgel was granted and has exercised... By the way, did you ever ask Joliet whether it would agree not to assert a waiver defense if the FHA defense was withdrawn? Getting a My understanding, Your Honor, is that no such stipulations were... This was a very acrimonious litigation. Was such a request ever made? I do not know, Your Honor. I was not counsel at that time. So Judge Norgel has exercised control of both these cases since 2005. At issue here is his application of collateral estoppel under circumstances where he could have preserved the jury trial right. We submit there were no imperative circumstances for him not to do so. But counsel, would it have violated the Seventh Amendment? Would you have had a right to a jury trial in 1791 if findings from an earlier equitable action were used to preclude a preclusive effect in a later action at law? We believe under Beacon Theaters we certainly would have, yes. In two separate actions? In two separate actions. And so you think the Supreme Court was just wrong in Park Lane when it said in 1791 that would not have been the case? We submit this is not Park Lane, Your Honor. Oh, we know this is not Park Lane. This is New West. But the Supreme Court answered Judge Barrett's question in Park Lane. And you've now just contradicted it. Why do you think the Supreme Court was wrong? The Park Lane case involved a congressional mandate to try an SEC case, an SEC enforcement action first, regardless of a parallel private action and with dispatch in the public interest. And this case involved a Seventh Circuit mandate to try the condemnation action first. Well, with all due respect, I believe those are different directions. And with all due respect, Your Honor, you're disagreeing with the Supreme Court. You're disagreeing with us. You know, you could have asked the Supreme Court. Maybe you did ask the Supreme Court to reverse our instruction that the condemnation action be tried first. But we did direct the district judge to do that because it had been far too long delayed. And the principal reason it had been far too long delayed was your defense under the FHA. And, Your Honor, you did direct him to do that. You recognize that the jury issue was not ripe at that time, and you did not direct the trial court to try it without a jury on the FHA claims, or to, in other words, in other ways, preserve the jury right. He could have impaneled a jury on the FHA claims. And the mandate, any mandate by, other than a congressional mandate we submit, does not rise to the level of imperative circumstances. But, counsel, if it wouldn't violate the Seventh Amendment to give a finding made in an earlier equitable action in a bench trial, preclusive effect in a later legal action, then this is just a matter of the court's discretion in deciding whether to consolidate these trials and conduct them with a jury. Because he's not avoiding a constitutional violation by declining to do so because it wouldn't violate the Constitution per what the Supreme Court said in Parkland. Well, in Parkland, the Supreme Court said that while they concluded that the preferable approach is not to preclude the use of offensive collateral estoppel, but to grant court's broad discretion to determine when it should be applied, they went on to say that the general rule should be that in cases where the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel. In this case, there was a... Non-mutual. Pardon me? But Parkland was about non-mutual, which was different. Right? Like you're... Part of the court's concern in Parkland and why Justice Rehnquist dissented was because it was non-mutual. And I think that that issue is not really present here. Right. It's a use of collateral estoppel against a pure defendant as a plaintiff, so I think it would be equivalent to the rule. So using collateral estoppel here is even less controversial than in Parkland. Except for the fact... It's more straightforward because we've got the same parties. We've got mutuality, which was the only issue that the court divided on in Parkland. We agree the only issue here is whether the jury trial issue is one that precludes the granting of collateral estoppel. Right, so if it was fair in Parkland without mutuality, it's certainly fair here. But in Parkland, two different cases, two different judges, no opportunity for one judge to hear both, congressional mandate that this SEC case proceed first, and in fact the Parkland party did not even request a jury trial or reserve its Seventh Amendment jury trial right at any point until after... So is it the accident of both of these actions being before the same judge? That's the problem here? Because they didn't have to be, right? I mean, what if it had not been Judge Norgal for both? Then you wouldn't have an argument about the Seventh Amendment? I submit it's the absence of the congressional mandate, the absence of the imperative circumstances required by Beacon, which Parkland did not disavow. Parkland said the general rule of Beacon is the general rule. But Parkland, if Beacon Theaters had been limited to one case, one action, then Parkland wouldn't have even had to deal with it. And Parkland didn't so limit it. The general language in Parkland recognizes the general principle of claims before one court, claims in an action. Yes, these actions had different numbers, and for certain purposes they were certainly distinct, but for all intents and purposes consolidated together since 2005, they were, except in form, they were one action. Here it was the action of that judge. But the form matters. Of course it does, but here all the claims certainly. If Beacon is not limited to simply the technical term of same action, and we submit that the actual language of Beacon does not so limit it. It referred to once in the Beacon opinion the same action, but that was with reference to Rule 18 and how it acknowledged that equitable and legal claims could arise in the same action. That was Beacon's reference to Rule 18. The Beacon Court went on to seriously consider the discretion of trial courts to sequence claims and concluded it would be very narrowly limited. We submit, and of course this was accepted by Parkland, but in Parkland you had a congressional mandate to go first with a different, with an SEC claim. You had the same thing in Katchen when you had a congressional mandate to proceed with a bankruptcy proceeding separately, and in Katchen the petitioner there voluntarily did submit his claim in bankruptcy, which he didn't have to do. He could have waited and had a jury trial later. Here we submit that we had no defenses or we would have been, they would have been deemed waived in a subsequent proceeding, and that's why New West did it. So it's really the absence of that SEC congressional mandate, the absence of the bankruptcy mandate in this case that distinguishes it from Park Lane. The court did have options here which were not present in other cases to preserve a jury trial. It was by its discretion to go ahead and try the case and deprive New West of a jury right. Of course this is an unusual situation in a difficult case, in a long case, but a jury trial is an important thing, and discrimination claims are critical. Congress declared that those claims should be tried to a jury. Here rather than using every opportunity available to it to try, to give New West a jury trial on the federal discrimination claims, it opted to try them himself. So we submit that's error. Thank you, Mr. Tetzlaff. Ms. Jones. Good morning, Your Honors. May it please the Court, I'm Stephanie Jones arguing on a case like Park Lane, and one fact that was not raised by opposing counsel that I think is worth pointing out is that it was only before, the eminent domain action was only before Judge Norgal, to the extent that it was, because of kind of an unusual circumstance. It was originally filed in the Circuit Court of Will County as a eminent domain case normally will be, and the expectation at the time when Joliet filed it is that there would be a relatively expedited proceeding before the judge in state court on what's called the Traverse section of the eminent domain matter, and only after that would there be a jury trial on the damages, or on essentially the, you know, the value of the property. And what in fact happened though is that because HUD was a move to federal court and then got put before Judge Norgal, who was presiding over the related case. There's no question that as with Park Lane, the two cases here are separate matters. An eminent domain case is a separate action to a Fair Housing Act case, and in fact this case initially... Do you know the answer to my question about the FHA defense? Was there a request made for a stipulation that the city would not argue waiver if that were dropped? Well Your Honor, there was not, and in fact the city argued strenuously before the lower court that the Fair Housing Act should not be tried in the eminent domain action. It was the city's position there was no need to reach all those I think so, Your Honor, and at the time the city wanted the eminent domain case resolved and would have agreed and argued that the Fair Housing case should be tried later. There are cases where Fair Housing Act claims arising out of eminent domain is tried as a separate matter. One example is the Hispanics United versus Village of Addison case, which dealt with kind of a that were challenged and said to represent a Fair Housing Act violation. Here, not only did the New West feel a need or choose to, voluntarily choose to, inject the Fair Housing Act into the eminent domain case because its real desire here was to enjoin or prevent the eminent domain action. It actually tried the issues that it had initially filed in this case, which was not begun as a case about the eminent domain action. This case was begun well before the eminent domain action was filed and really started as a challenge to Joliet's alleged interference in the mark-to-market process with a claim that Joliet should not have gotten involved with that. Now, clearly those issues are different. If the statement was made that really Joliet's eminent domain action should be tried first, it might resolve some of the issues in the separate action and then, you know, other issues perhaps would then be up in question, such as whether or not Noor Pennington precluded the arguments about the mark-to-market process. You know, even the questions about the mark-to-market process, though, were presented in the case. There were findings of fact entered as to them. They became part of the conclusions of law and New West has not challenged that any of the matters involved in the current case were not actually decided in the eminent domain action, which, you know, I might have thought would be the argument they would make, but no, they didn't argue any of that. They simply claimed that under Beacon Theaters, which dealt solely with claims arising out of the same action, that somehow means that the judge lost all discretion not to consolidate a Fair Housing Act with a eminent domain matter, even one that had circumstances been slightly different as the mortgage holders would have definitely been tried in a state court and there's no argument that if the state court had tried those issues that they would not have been collateral estoppel to the extent they were raised there, chosen to be raised there. So to suggest that that means, contrary to Park Lane, that this ruling in Beacon Theater should be expanded so that any time a judge has the ability to consolidate cases, and that's even setting aside the argument as to whether or not it would be appropriate to consolidate affirmative claims with an eminent domain action, but, you know, setting that aside, this would suggest that a judge has an obligation to discretion that is really classic, that a judge has the right to determine whether or not to consolidate claims. And it also then would raise the question, okay, if they happen to be before the same judge, is there an obligation to consolidate? Well, then is there an obligation to, for the court to put them before the same judge? You know, how far does this expansive argument reach? And to suggest that this is different than Park Lane, merely because in Park Lane, the argument in Park Lane about the fact that it was an SEC action initially, that had to do with whether or not, that really had to do simply with the affirmative, with the offensive use of collateral estoppel in a non-mutual situation, because the point was that it couldn't have been mutual, because they weren't able to be part of the other action. None of that is really an issue here. And the irony is, the focus on on Beacon Theaters, is that the problem in Beacon Theaters was that essentially by preemptively filing a case, raising the same issue, saying, hold that we did not violate the Sherman Act, that the judge then could, if that was permitted, could then try any case essentially as an equitable action first, before reaching the merits of the claim. That's clearly a problem, and that is really what the ruling in Beacon Theaters is, almost like a reverse, because essentially after New West knew that an eminent domain action was likely to be filed, they incorporated into this action a request for an injunction against the eminent domain matter. So they essentially want to open the door to the matter that they would always be able to get two bites at the apple. That they would be able to put all of their defenses in the eminent domain case, and then if those fail, to say we are entitled to a jury trial and we get to retry them. And that is not appropriate. Unless this panel has further questions, I'll thank you and rest. Thank you, Ms. Jones. Anything further, Mr. Tetzlaff? Respectfully, this case is not about two bites at the apple. New West, from the inception and throughout the proceeding, asked for and demanded a right to a jury trial on its federal claims. This case is about whether every effort will be done to preserve a right to a jury trial, or whether it will be overridden by the application of certain rules. Beacon Theaters recognized that with the advent of the federal rules, the neat categories of claims were broken down. There weren't just equitable and legal and so forth, but that both could be joined in one proceeding. As practice has evolved, many claims are now adjoined in one case, one proceeding. The significant thing is the control of a federal judge who had control over all aspects of this case, and rather than taking the steps to preserve the jury right, took the steps to preclude it. That's what this case is about, and that's why we seek reversal. Thank you very much, counsel. The case is taken under advisable